IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| NADA TADIC, all on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | CASE NO: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | COMPLAINT |
| EXPERIAN INFORMATION SOLUTIONS, INC., and CONSUMERINFO.COM, INC. | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Nada Tadic, brings this action on behalf of herself and all others similarly situated (Class Members, as defined below), and files this Class Action Complaint against Experian Information Solutions, Inc. and Consumerinfo.com, Inc., ("Experian," "Consumerinfo," or collectively, "Defendants"). Plaintiff alleges the following based on information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to herself.

## I. INTRODUCTION

1.     On at least their CreditCheckTotal.com website, Experian and its Consumerinfo.com business employ deceptive practices in soliciting customers to enroll in their services, telling them: "See Your 3 Credit Reports & FICO® Scores*

1

for just $1!"[1]  Experian further states that "[w]hen you order your $1 3-Bureau Credit Report & FICO® Scores, you will begin your 7-day trial membership in CreditCheck® Total. If you don't cancel your membership within the 7-day trial period**, you will be billed $29.95 for each month that you continue your membership. ***You may cancel your trial membership anytime within the trial period without charge***.[2]



Id.

      2.     This claim that you can cancel "anytime" is false and misleading.  A

---

[1] See https://www.creditchecktotal.com

[2] Id.

consumer cannot actually cancel "anytime" because the only way to cancel a membership is to call a telephone number that puts you on hold indefinitely, sometime projecting up to a 7 hour wait time.  While a consumer can easily sign up for the service online, Experian has intentionally made the process of cancellation impossible by creating a situation where the consumer must sit on hold for inordinate amounts of time.

3.    Plaintiff and Class Members join together in this action accusing the Defendants of scamming consumers out of their money by not allowing them to cancel their memberships during the $1.00 seven-day trial membership period, nor allowing them to cancel even after the trial period has ended.

4.    Defendants advertisements and promotional materials offer consumers the opportunity to obtain a seven-day trial with three credit bureaus reports and FICO score for a fee of $1.00.  See https://www.creditchecktotal.com/

5.    Defendants state on their website that you can cancel your trial membership at "anytime" before the seven-day trial period ends and you will not be charged. Id.

6.    If the consumers do not cancel their membership within the trial period, they are charged a monthly fee of $29.95.  Id.

7.    Defendants induced consumers to sign up for the service by claiming it was only going to cost the consumers $1.00, and they purchased the trial

membership based on that representation and the understanding that they could cancel "anytime" before the end of the trial period. Only after consumers signed up did Defendants inform them that, if they wanted to cancel their trial membership, they had to do it by calling their 1-877-284-7942 toll free number.

8.      When consumers called the toll-free-number and followed all the available and appropriate prompts, they were put on hold for periods that were projected to be anywhere between 1-7 hours, if there was any projection at all. Ultimately, the consumer held on the line and were never able to speak to somebody to cancel the membership.

9.      Defendants at no time gave their consumers any other options to cancel their trial membership, other than by calling the given toll-free-number.

10.     Plaintiff and Class Members were frustrated after being on hold indefinitely for hours and eventually gave up waiting.  Plaintiff tried throughout the trial membership period to cancel her membership but had no success in reaching a live individual.  Because of not being able to speak with a representative their trial membership period ended and the consumers were charged $29.95 monthly.

11.     Based upon a large number of complaints against Defendants and this service, Class Members have had the identical experience with trying to cancel before and after the trial period ended. See Figures 1-3 below as examples.



Figure 1 (available at https://wallethub.com/profile/creditcheck-total-13760350i/,

and last accessed June 14, 2018).



Figure 2 (available at https://wallethub.com/profile/creditcheck-total-13760350i/,

and last accessed June 14, 2018).



Figure 3 (available at https://wallethub.com/profile/creditcheck-total-13760350i/,

and last accessed June 14, 2018).

12.    Even after Plaintiff and Class Members were charged the monthly fee,

they were unable to cancel their membership.  Plaintiff and many of Class Members

continuously kept calling the Defendants until the Defendants automated message changed, which was on or about April through May of 2018, stating that the consumers were receiving their membership for free and for them to go to the Defendants website and login for any membership concerns, and then the telephone system hung up on them.

13.    Plaintiff and Class Members logged in to their accounts only to find out that it again stated that they had to call the same toll-free number in order to cancel their membership.

14.    But even this was false, deceptive, and misleading.  The Plaintiff and Class Members were still being billed for their membership and it was not free as the Defendants stated on their automated message.

15.    The Defendants chosen business model yields predictable results by encouraging and rewarding deceptive and other unlawful conduct.  Online alone, it is apparent that hundreds of their consumers have complained about not being able to cancel their membership.

16.    Specifically, Class Members have routinely reported: (1) they were unable to cancel their trial membership as well as the monthly charges after the trial membership period; (2) they have called on numerous occasion and were on hold for more than two hours; and (3) when they did speak with someone they promised to cancel their membership but never did.

17.    When the Class Members have complained, the Defendants did nothing except for continuing to take their money monthly.

18.    As a consequence, the Defendants have engaged in consumer fraud, deceptive sales practices, breach of contract, negligent misrepresentation, fraudulent inducement, and unjust enrichment, and they are liable to Plaintiff and Class Members for damages resulting from the same.

19.    Through this Class Action Complaint, Plaintiff seeks to recover damages, injunctive relief, and all other remedies available at equity and on behalf of herself and all other similarly situated current and former Experian Information Services, Inc. and Consumerinfo.com, Inc., customers.

## II. PARTIES

### A.    DEFENDANTS

**Experian**

20.    Experian is the leading global information services company, that provides data and analytical tools to consumers in more than 65 countries.

21.    Experian owns Consumerinfo.com, which owns Creditchecktotal.com

22.    Experian is a California corporation, headquartered in Lyndhurst, Ohio.

23.    All money transactions for Consumerinfo.com are done by Experian.

**Consumerinfo.com, Inc.**

24.    Defendant Consumerinfo.com, Inc. is a California corporation which is operated from its principal place of business in 475 Anton Boulevard, Costa Mesa,

California 92626.

25.    Consumerinfo.com owns CreditCheckTotal.com which is an online consumer credit reporting site.

26.    Defendant Consumerinfo.com provides online credit reports, scores, and related information to consumers in the Northern District of Georgia and throughout the United States.

### B.    PLAINTIFF

27.    Plaintiff Nada Tadic ("Tadic") resides in Marietta, Georgia, and is a citizen of Georgia (Cobb County).

## III. JURISDICTION AND VENUE

28.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's and Clss Members state claims pursuant to 28 U.S.C. § 1367.

29.    This Court also has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a class action in which: (1) there are more than one hundred (100) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate.

30.    This Court has personal jurisdiction over the Defendants because they

conduct business in this District and has sufficient minimum contacts in this District. Defendants intentionally availed themselves of this jurisdiction by transacting business and deriving substantial revenues from business activity in this District.

## IV. ALLEGATIONS

31.     On or about, March 1, 2018 Plaintiff Nada Tadic, was trying to improve her credit score.  In order for the Plaintiff to do that she needed to obtain a credit report and FICO score where it showed all three (3) creditor scores.

32.     After much research, Plaintiff Tadic decided to go with Experian for they were well known and they offered a 7-day trial membership for a $1.00.   At the time, however, she was unaware of their fraudulent, deceptive, and unfair business practices with respect to its CreditCheckTotal.com website.

33.     There was a stipulation of keeping the $1.00 charge.  Plaintiff Tadic paid the $1 on her card.  Plaintiff Tadic was aware that, pursuant to Defendants' representations, she would have had to cancel her membership within the 7-day trial period, otherwise Plaintiff Tadic's credit card would be charged $29.95 every month until she cancelled her membership.

34.     Plaintiff Tadic registered to receive her credit reports and, only *after* becoming a member, was informed that she could only cancel the membership by calling them at 1-877-284-7942.

35.     On  or  about  March  2,  2018,  Plaintiff  Tadic  first  contacted  the

Defendants at 1-877-284-7942, the only toll-free number available by them. She followed all the prompts and was advised that the waiting time was going to be between 4-6 hours. Plaintiff Tadic waited for approximately 1 hour and hung up because she could no longer wait on hold.

36.    On or about March 4, 2018, Plaintiff Tadic again attempted to call Defendants and cancel her membership but got the same voice message.

37.    On or about March 8th, 2018 Plaintiff Tadic again attempted to call Defendants and received the same message that the wait time would be anywhere between 4-6 hours.

38.    On March 12th, 2018 Plaintiff Tadic's credit card was charged $29.95 because she was unable to reach someone to cancel her membership.

39.    On or about March 13th, 2018 Plaintiff Tadic again called the Defendants' number and again received the same wait time 4-6 hours.

40.    On or about March 26th, 2018 Plaintiff Tadic called Defendants' number, again she received the same message.

41.    On or about April 10th, 2018 Plaintiff Tadic called again and received the same message from Defendants.

42.    On April 11, 2018 Plaintiff Tadic's credit card was charged $29.95, again.

43.    On April 13th, 2018 through May 3, 2018 Plaintiff Tadic called the

Defendants only to find out that they changed their automated message, which then stated that she received her membership for free, for her to please logon on to her account for any membership concerns, and then automatically hung up.

44.    On May 11th, 2018 Plaintiff Tadic's credit card was charged $29.95. Obviously, it is not free.

45.    The fact pattern described above is substantively identical to the experience of the Class Members.  Class Members were duped into a supposedly low-cost credit checking service only to be put in a position where they were effectively unable to cancel their memberships, and subsequently they were charged a monthly fee and stuck in a cycle of monthly billing from which they cannot escape. Defendants predatory tactics must be stopped.

## V. CLASS ACTION ALLEGATIONS

46.    This action is brought, and may be properly maintained, as a class action under Rule 23 of the Federal Rules of Civil Procedure. All requisite elements of Fed. R. Civ. P. 23 are satisfied; there is a well-defined community of interests in the litigation; the proposed Class and the Georgia Subclass are ascertainable; and a single class action is the superior manner to proceed when compared to the joinder of hundreds of thousands of plaintiffs or tens of thousands of individual cases challenging the same practices.

47.    Plaintiff brings this action individually on behalf of herself, and in a

representative capacity on behalf of the Class and the Georgia Subclass defined below, for which Plaintiff is a member, under Rule 23 of the Federal Rules of Civil Procedure seeking damages, restitution, injunctive and declaratory relief pursuant to the applicable laws set forth in the state law counts below. The "Class" is defined as:

> All customers, who enrolled in Defendants' $1 credit checking services at CreditCheckTotal during the Class Period and were later charged a monthly service fee that they had attempted to avoid by cancelling (each customer being a "Class Member" and together the "Class Members")

48.    Within the Class is a "Georgia Subclass," which is defined as follows:

> Georgia Subclass: All persons in the State of Georgia who enrolled in Defendants' $1 credit checking services at CreditCheckTotal during the Class Period and were later charged a monthly service fee that they had attempted to avoid by cancelling (each customer being a "Class Member" and together the "Class Members")

49.    The "Class Period" for the Class and the Georgia Subclass dates back to the longest applicable statute of limitations for any claims asserted on behalf of that Class or Subclass from the date this action was commenced and continues through the present and to the date of judgment.

50.    Excluded from the Class and any Subclass is Defendant, its current employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; the undersigned counsel for Plaintiffs; and the judge and court staff to whom this case

is assigned.  Plaintiff reserves the right to amend the definition of the Class or the Georgia Subclass if discovery or further investigation reveals that they should be expanded or otherwise modified.

51.    This action satisfies the predominance, commonality, typicality, numerosity, superiority, adequacy, and all other requirements of Rule 23 of the Federal Rules of Civil Procedure.

     a.    Numerosity: Each proposed Class and Subclass is so numerous that the individual joinder of all members is impractical under the circumstances of this case. Each proposed Class and Subclass consists of at least tens of thousands of Defendants' customers. While the exact number of Class Members and Subclass members is currently unknown, Plaintiff is informed and believes, and thereon alleges, that hundreds of customers across the country and in each state Defendants operate have been victimized by Defendants' practices, in the manner described above.

     b.    **Commonality**: Common questions of law and fact exist as to all members of the Class and the Georgia Subclass, and predominate over any questions that affect only individual members of the Class and the Georgia Subclass. The practices at issue are not isolated incidents but instead are widespread, common, and systematic practices affecting

large groups of Defendants' customers in each state.  The common questions of law and fact include, but are not limited to:

   i.  Whether Defendants failed to allow customers to cancel their memberships during seven-day trial membership period;

   ii.  Whether Defendants failed to allow customers to cancel after the trial period ended;

   iii.  Whether Defendants failed to inform customers prior to enrollment that if they wanted to cancel their trial membership they may do so only by telephone;

   iv.  Whether Defendants negligently and/or intentionally created exorbitant wait times to speak with a representative, effectively not allowing customers to speak with a representative during their trial membership and after their trial membership ended;

   v.  Whether Defendants limited the method of cancellation;

   vi.  Whether Defendants charged Plaintiff and the Class after cancellation, or attempted cancellation, of his or her services;

   vii.  Whether Defendants made misrepresentations or omissions of material fact about its cancellation policy, pricing and the nature of its services;

   viii.  Whether Defendants failed to provide safeguards to prevent the

misconduct at issue;

ix.  Whether Defendants engaged in a practice or act with intent to sell or increase the consumption of its services, or with intent to induce the public in any manner to enter into any contract or obligation relating to its services, made, published, disseminated, circulated or otherwise placed before the public an advertisement, announcement, statement or representation of any kind to the public relating to such services or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive, or misleading;

x.  Whether Defendants engaged in a practice or act that it knew or reasonably should have known to be an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact related to the advertisement or sale of credit reporting and monitoring services;

xi.  Whether Defendants intended to cause confusion or misunderstanding among consumers regarding the pricing and cancellation policy of its credit monitoring services and whether

Defendants intended not to honor its offered pricing and policies;

xii.   Whether Defendants have been unjustly enriched;

xiii.   Whether Plaintiff and the Class were harmed and suffered damages as a result of Defendants' conduct and, if so, the appropriate amount thereof; and

xiv.   Whether, as a result of Defendants' misconduct, Plaintiff and the Class are entitled to equitable relief, and if so, the nature of such relief.

c.   **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class and the Georgia Subclass to which they belong. Plaintiff is member of the Class, as well as the respective Georgia Subclass. Plaintiff was subjected to Defendants' common business practices, described above, and asserts common legal claims that are typical of those of the Class and the Georgia Subclass. Plaintiff and other members of the Class and the Georgia Subclass sustained damages arising out of Defendants' wrongful and deceptive conduct as alleged herein, and face the risk of further harm unless enjoined. Resolution of the common issues presented in Plaintiff's case will resolve them in a common and typical manner for other members of the Class and the Georgia Subclass.

d. **Adequacy of Representation**: Plaintiff and the undersigned counsel will fairly and adequately protect the interests of the Class Members. Plaintiff is knowledgeable about their claims and practices complained of; is prepared to prosecute the claims in the best interests of the Class and the Georgia Subclass; has no interest that is adverse to the interests of the other members of the Class and the Georgia Subclass; and has hired counsel experienced in class actions and complex litigation to represent the Class and the Georgia Subclass. The undersigned counsel is sufficiently experienced in complex litigation; are prepared to prosecute this action in the best interest of the Class and the Georgia Subclass; and have no conflicts with the members of the Class or the Georgia Subclass.

e. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all Class Members is impracticable, class action treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members

of the Class and the Georgia Subclass to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to, and burden on, the court system by adjudicating individualized litigation would be substantial, and significantly more than the costs and burdens of a class action. Class litigation will also prevent the potential for inconsistent or contradictory judgments.

52.    A Class should also be certified under Fed. R. Civ. P. 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to the Class and the Georgia Subclass, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class.

53.    In the alternative, this Class and the Georgia Subclass may be certified under Fed. R. Civ. P. 23(c)(4) with respect to particular issues.

## COUNT I: BREACH OF CONTRACT
## (ON BEHALF OF PLAINTIFF AND A NATIONWIDE CLASS)

54.    Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

55.    Plaintiff and each member of the Class received an offer for services from Defendant, agreed to pay, and did pay Defendants for the provision of credit reporting and monitoring services at agreed upon costs. In doing so, Plaintiff and each member of the Class entered into a contract with Defendant.

56.    Defendants expressly and/or impliedly agreed to provide a seven-day trial with three credit bureaus reports and FICO score for a fee of $1.00 with the express provision that Plaintiff and Class Members could cancel "anytime."  If the Plaintiff and Class Members did not cancel their membership within the trial period, they were charged a monthly fee of $29.95.

57.    Defendants breached these obligations including, but not limited to (1) by not allowing Plaintiff and each member of the Class to cancel their memberships during seven-day trial membership period; (2) by not allowing them to cancel after the trial period has ended; (3) by failing to inform potential customers prior to enrollment that the only permitted method of cancellation was by calling to speak with an agent for Defendants even though they could enroll with ease online; (4) by failing to give their customers no other options to cancel their trial membership, other than by calling; (5) by creating exorbitant wait times to speak with a representative, effectively not allowing customers to speak with a representative during their trial membership and after their trial membership ended; and/or (6) by continuing to charge customers after speaking with Defendants and requesting cancellation.

58.    Defendants' acts, imposing unwanted and unauthorized charges on Class Members' accounts, were intentional and willful.

59.    Defendants routinely charged Plaintiff and the Class in breach of their

offers and contracts, implied or express. Defendants failed to deliver credit reporting and monitoring services at the promised price. Plaintiff and Class Members were charged excessive amounts that they did not agree to pay.

60.    Alternatively or additionally, Plaintiff and Class Members were charged for services that they had properly canceled.

61.    Plaintiff and Class Members paid Defendants for these services and in all other respects performed or substantially performed their obligations under the contracts.  Defendants were not justified in charging Plaintiff and the Class for these amounts.

62.    An implied covenant of good faith and fair dealing is part of all contracts. Defendants breached its contractual obligation of good faith and fair dealing, implied in all contracts, by not permitting Plaintiff and Class Members to cancel and continuing to bill for unwanted services.

63.    Defendants' conduct in breaching the contracts in the above-described manner was not isolated but was rather systematic, pervasive, persistent, and a direct result of business policies and practices implemented to maximize Defendants' revenue.

64.    Plaintiff and the Class were injured, harmed, and incurred financial loss by way of Defendants' above-described conduct in amounts to be determined at trial.

65.    Plaintiff and the Class did not voluntarily pay the unauthorized charges in dispute. At the time it occurs, most consumers are unaware that they have been subjected to these unauthorized charges and/or have been a victim of cramming. When Plaintiff and Class Members discovered the billings, they protested and demanded refunds, including through this action.

66.    As a result of the foregoing, Plaintiff and the Class are entitled to, among other things, compensatory damages and all other relief deemed just and equitable by the Court.

## COUNT II: UNJUST ENRICHMENT
## (ON BEHALF OF PLAINTIFF AND A NATIONWIDE CLASS)

67.    Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

68.    This Count is asserted on behalf of the Class.

69.    As a result of Defendants' unlawful, unfair, deceptive, and wrongful acts and omissions, customers bore the brunt of the unwanted and unauthorized charges and ended up paying while the Company unjustly reaped profits.

70.    As alleged herein, Defendants were unjustly enriched at the expense of Plaintiff and Class Members, who were grossly and inequitably charged for Defendants' credit monitoring and reporting services.

71.    Defendants unjustly deprived Plaintiff and Class Members of money they paid due to the Defendants' deceptive pricing and cancellation practices.

72.     Defendants' retention of this ill-gotten revenue is unjust and inequitable because Defendants used illegal, deceptive, and unfair business practices to induce or otherwise mislead customers to open and/or purchase Defendants' services.

73.     Defendants' retention of this revenue is also unjust and inequitable because Defendants used illegal, deceptive, and unfair business practices to limit customers' ability to cancel Defendants' services once they were no longer wanted. Plaintiff and Class Members had to pay unwanted and unauthorized charges because Defendants would not allow Plaintiff and Class Members to cancel their membership. Defendants received a benefit for services that Plaintiff and Class Members did not bargain for.

74.     Defendants were aware of the benefit they were receiving as a result of its unlawful, unfair, deceptive, and wrongful acts and omissions, and has enjoyed the benefits of its financial gains to the detriment and at the expense of Plaintiff and Class Members.

75.     Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and Class Members is unjust and inequitable. Plaintiff and Class Members are entitled to seek restitution and all other relief as deemed just and equitable, including but not limited to, an order requiring Defendants to disgorge all profits, benefits, and other compensation obtained by virtue of its wrongful conduct.

76.     This claim is asserted as an alternative to Plaintiff's claim for breach of

contract and in recognition that any contracts executed by Plaintiff and Class Members may be void or voidable.

77.    Plaintiff and the Class directly conferred a benefit upon Defendants through their overpayments.

78.    Defendants were aware of the benefit it was receiving as a result of its unlawful unfair, deceptive, and wrongful acts and omissions, and has enjoyed the benefits of it financial gains to the detriment and at the expense of Plaintiff and members of the Class.

79.    Defendants' retention of monthly fees gained through its wrongful acts and practices was inequitable and unjust. Plaintiff and the Class paid these amounts to Defendants in reliance on its material misrepresentations and omissions of fact.

80.    Plaintiff and members of the Class have no adequate remedy at law. Plaintiff and members of the Class are entitled to seek restitution and other relief from Defendant, including but not limited to, an order requiring Defendants to disgorge all profits, benefits, and other compensation obtained through and for its wrongful conduct.

## COUNT III: FRAUDULENT INDUCEMENT
## (ON BEHALF OF PLAINTIFF AND A NATIONWIDE CLASS)

81.    Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

82.    This count is asserted on behalf of the Class.

83.     Defendants falsely represented and/or omitted material facts that were susceptible of knowledge, with the intent of inducing Plaintiff and Class to act.

84.     Plaintiff and the Class justifiably relied on the representation and/or omissions, and suffered damages as a proximate cause of that reliance.

85.     Here, Defendants falsely and unlawfully represented and/or omitted material facts to Plaintiff and the Class, namely in its pricing and cancellation practices, including but not limited to by failing to inform customers prior to enrollment that if they wanted to cancel their trial membership they may only do so by phone, and by continuing to charge Plaintiff and the Class for services after Plaintiff cancelled or requested the cancellation of services.

86.     Defendants' representations were untrue, misleading, unfair, and susceptible of knowledge. Further, Defendants' material omissions were deceptive.

87.     Defendants had superior knowledge and was in exclusive control of the material facts at issue. It had a duty to disclose them to Plaintiff and the Class.

88.     Defendants made its false representations and omissions with the intent of inducing Plaintiff and the Class to obtain and continue paying for services from Defendants.

89.     Plaintiff and members of the Class justifiably relied on Defendants' false information and omissions.

90.     Defendants' false information and omissions proximately caused harm

to Plaintiff and the Class.

91.    As a result of the foregoing, Plaintiff and the Class are entitled to, among other things damages, an accounting, and all other relief deemed just and equitable by the Court.

## COUNT IV: VIOLATION OF GEORGIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (ON BEHALF OF PLAINTIFF AND THE GEORGIA CLASS)

92.    Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

93.    Plaintiff and the Georgia Subclass are "persons' within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), O.C.G.A. § 10-1-371(5).

94.    The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding," and "advertising goods or services with intent not to sell them as advertised."  O.C.G.A. § 10-1-372(a).

95.    Defendant violated the Georgia UDTPA by falsely representing that Plaintiff and Georgia Subclass could (1) cancel their memberships "anytime" during seven-day trial membership period; and (2) cancel "anytime" after the trial period has ended. Defendants' violations present a continuing risk to Plaintiff as well as to

the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

96.     Defendants engaged in misleading, false, unfair or deceptive acts or practices that were disseminated nationwide and within Georgia that violated the Georgia UDTPA by failing to disclose (1) to customers prior to enrollment that if they wanted to cancel their trial membership they may only do so by phone; (2) by failing to give their consumers no other options to cancel their trial membership, other than by calling, when they could sign up in the first place online and with ease; (3) by creating exorbitant wait times to speak with a representative, effectively not allowing customers to speak with a representative during their trial membership and after their trial membership ended; (4) by continuing to charge customers after speaking with Defendants and requesting cancellation; (5) by collecting Plaintiff's and Georgia Subclass' payments with knowledge that the Plaintiff and Georgia Subclass had cancelled and attempted to cancel their service; and (6) by not refunding charges made to Plaintiff's and Georgia Subclass following cancellation. Defendants advertised its product(s) and/or service(s) with the intent not to sell them as advertised.

97.     In the course of Defendants' business, it has willfully failed to disclose the fact that its product(s) and/or service(s) were not as advertised.

98.     As a direct and proximate result of Defendants' unlawful practices and

acts, Plaintiff and Georgia Subclass were injured and lost money or property, including but not limited to the fees received by Defendants for the credit monitoring services, the loss of their time in cancelling or attempting to cancel their service, the loss of time and money in disputing these unauthorized charges, and additional losses described above.

99.    Upon information and belief, Defendants' actions were willful.

100.    Plaintiff and Georgia Subclass seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and attorneys' fees and costs pursuant to Georgia's UDTPA per O.C.G.A. § 10-1-373.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, for herself and on behalf of all others similarly situated, respectfully requests the following relief:

     a.  certification of this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), and appointment of Plaintiff and her counsel to represent the Class;

     b.  a final judgment against the Defendants on the claims alleged herein;

     c.  an injunction requiring the Defendants to change the methods of cancellation and to notify all customers of the ability to cancel that way;

d.  an injunction requiring the Defendants to promptly, fully, and effectively permit each Class Member to cancel service and refund any unauthorized or unwanted charges;

e.  an injunction requiring Defendants to update its systems and policies in a manner that will reasonably prevent this type of harm in the future;

f.  an award to the Plaintiff and Class of attorneys' fees, expenses, and costs of this suit;

g.  such other and further relief that is just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, on behalf of herself, the Class, and the Georgia Subclass, demand a trial by jury on all issues so triable.

Date: June 15, 2018

*/s/ James F. McDonough, III.*
James F. McDonough, III (GA Bar #: 117088)
Travis E. Lynch (GA Bar # 162373)
Jonathan R. Miller (GA Bar# 507179)
Heninger Garrison Davis, LLC.
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
P: (404) 996-0860

30

F: (205) 380-8076
jmcdonough@hgdlawfirm.com
tlynch@hgdlawfirm.com
jmiller@hgdlawfirm.com


W. Lewis Garrison (GA Bar #: 286815)
Chris B. Hood, PHV forthcoming
Heninger Garrison Davis, LLC.
2224 First Avenue North
Birmingham, AL 35203
P: (205) 326-3336
F: (205) 380-8085
Lewis@hgdlawfirm.com
chood@hgdlawfirm.com


*Attorneys for Plaintiff*

<u>Local Rule 7.1 Compliance Certificate</u>

Pursuant to L.R. 7.1.D, this certifies that the foregoing document complies with the font and point selections approved by L.R. 5.1.C. The foregoing document was prepared using Times New Roman font in 14 point.

Dated: June 15, 2018.

*/s/ James F. McDonough, III.*
James F. McDonough, III (GA Bar #: 117088)
Heninger Garrison Davis, LLC.
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
P: (404) 996-0860
F: (205) 380-8076
jmcdonough@hgdlawfirm.com